**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| **TODD K. GARDNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2:13cv0001 TCM** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Carolyn W. Colvin, the Acting Commissioner of Social Security (the Commissioner), denying Todd K. Gardner's applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401-433, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381-1383b. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

## Procedural History

Todd K. Gardner (Plaintiff) applied for DIB and SSI on December 2, 2010, claiming that he became disabled that same date because of

diabetes, a heart condition, and a back condition. (Tr. 144-51, 178.) Plaintiff subsequently amended his alleged onset date to November 24, 2010. (Tr. 172.) His applications were denied initially and after a hearing held before administrative law judge Robert Hodum. (Tr. 8-21, 26-95.) After considering additional evidence, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-5.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, Plaintiff claims that the ALJ's decision that he is able to perform his past relevant work as a dump truck driver is not supported by substantial evidence on the record as a whole, arguing that the ALJ improperly discounted the opinion of his treating physician. Plaintiff requests the Court to amend the final decision to a fully favorable decision, or remand the matter to the Commissioner for further consideration. For the reasons that follow, the ALJ did not err in his determination.

## Testimony Before the ALJ

Plaintiff, represented by counsel, and Chad Jones, a vocational expert, testified at the administrative hearing.

At the time of the hearing, Plaintiff was forty-nine years of age. He is married and has grown children. Plaintiff and his spouse alternate

residences between their son's house and Plaintiff's mother's apartment. Plaintiff is 6 feet tall and weighs 315 pounds. Plaintiff completed high school and received training as a truck driver in order to obtain a commercial driver's license. (Tr. at 33-36.)

Plaintiff's Work History Report shows that Plaintiff worked for a hospital as a patient transporter from July 1994 to November 2005. In March and April 2006, Plaintiff worked as a delivery driver for Coca-Cola. From April 2006 to November 2007, Plaintiff worked as a dump truck driver in construction. From February 2008 to November 2010, Plaintiff worked as a delivery driver for a tire retail company. (Id. at 199.) Plaintiff testified that he quit this job on November 24, 2010, when he moved to Missouri from Texas. Plaintiff testified that he has neither worked nor applied for work since that time. (Id. at 32, 36-37.)

Plaintiff testified that he injured his back in January 2003 while working as a patient transporter and continues to experience back pain. The pain worsens with lifting, walking, strenuous work, and standing for long periods of time. And, his back locks up when he bends over. Plaintiff used to receive injections for the pain, but had to stop because the injections increased his blood sugar level. He has not been referred to an orthopedist since he first injured his back. (Id. at 59-61.)

Plaintiff had a heart attack in October 2008, after which he continued to work for the tire retail company but was assigned light-duty tasks. Plaintiff testified that his job consisted mostly of sitting since he was a truck driver, and that he lifted only thirty to forty pounds after he had the heart attack. His job as a dump truck driver required primarily sitting and very little lifting. (Id. at 32-33, 37-39.)

Plaintiff explained that he is currently unable to work because of his heart condition. He had a stent placed in November 2008 as a result of his heart attack and recently underwent another heart catheterization procedure. (Id. at 42.) He feels about the same as he did in 2008 after he had his first heart procedure. (Id. at 48.) Plaintiff testified that he feels his heart flutter when he exerts himself and then must slow down whatever he is doing. He last saw his cardiologist in August 2011 and was scheduled to see him in March 2012. (Id. at 45-47.)

Plaintiff has uncontrolled hypertension and was hospitalized for the condition when he moved to Missouri. (Id. at 43, 48.) The hypertension has since worsened. Plaintiff reported that he experiences weakness and dizziness and sometimes feels as though his heart is ready to pop through his chest. (Id. at 65-66.) He takes medication for the condition, which he thinks helps, but the medication causes him to feel dizzy and lightheaded

four or five times a day. He has taken the same medication since 2008; his current doctor has increased the dosage. (Id. at 50-51.)

Plaintiff testified that he also experiences constant chest pain that radiates to his shoulders and back. The pain ranges in severity from a level two to a level eight. His doctors have told him the pain is related to hypertension, and no additional treatment has been provided. His doctors have advised him to exercise for the condition, but that his feet swell when he walks. (Id. at 53-55.)

Plaintiff has breathing difficulties in that his chest feels heavy. His breathing is bothered by dust, fumes, smoke, and other similar irritants. (Id. at 56.)

Plaintiff also has diabetes for which he takes insulin injections. Medication and diet have been effective in controlling his diabetes, but he continues to experience nausea, blurred vision, and frequent urination because of the condition. Plaintiff believes that he can no longer drive commercially because of his insulin dependence. (Id. at 44-45, 49, 67.)

Plaintiff sees a physician every three months for his conditions. His physician has not specifically restricted any of his activities. (Id. at 44-45.)

Plaintiff further testified that he can sit up to six hours in an eight-hour day and can sit in one position for three hours before needing to stand. He

can stand for ten to fifteen minutes at one time before needing to sit because of leg, chest, and back pain; however, he can stand for a total of up to two hours in an eight-hour day.  He can walk about twenty-five to thirty steps at one time and can walk a total of thirty minutes in an eight-hour day.  He can lift ten to fifteen pounds.  (<u>Id.</u> at 56-58.)

As to his daily activities, Plaintiff testified that he helps with chores, such as vacuuming, mopping, cleaning, and cooking, but he must stop and sit down while doing so.  (<u>Id.</u> at 61-62.)  He watches television and sometimes takes short naps during the day.  He sits in his recliner up to six hours a day to help his back and chest pain and to relieve the swelling in his legs.  (<u>Id.</u> at 64-66.)  He attends church every Sunday and runs the sound system for church events.  Sometimes, he attends church functions and helps with church barbeques.  He goes fishing and last fished in July. (<u>Id.</u> at 62-64.)  He drives twice a week to the grocery store or to other places in town, but that blurred vision sometimes causes difficulty.  (<u>Id.</u> at 35, 68.)  He sometimes has problems dressing and bathing, because he has difficulty bending over and with reaching over his head.  (<u>Id.</u> at 65.)

Mr. Jones classified Plaintiff's past work as a sales route driver as medium – heavy as performed, with an specific vocational preparation (SVP) level of 3; as a patient transporter as medium – heavy as performed,

with an SVP level of 2; and as a dump truck driver as light – and light as performed, with an SVP level of 3.  (Id. at 71-72.)[1]

The ALJ asked Mr. Jones to assume an individual of Plaintiff's age, education, and past relevant work and to further assume the individual to be limited to light work as defined in the Regulations.  Mr. Jones testified that such a person can perform Plaintiff's past work as a dump truck driver. (Id. at 72.)  Mr. Jones further testified that the person can perform such work even if he needs to avoid concentrated exposure to hazards and needs to take two additional breaks per day beyond the three authorized break periods.  (Id. at 74, 77-78.)

### Medical Records Before the ALJ

A computed tomography (CT) scan of Plaintiff's lumbar spine taken on January 12, 2004, in response to his complaint of radiating low back pain showed a large herniated lumbar intervertebral disk on the left at the L5-S1 level and small disk protrusion into the left neural foramen at the L4-5 level.  (Id. at 308.)  On January 23, Plaintiff received an epidural steroid injection for the associated pain.  (Id. at 309-10.)

Plaintiff was seen at the emergency room at Audrain Medical Center

---

[1] The *Dictionary of Occupational Titles (DOT)* lists a SVP time for each described occupation. Using the skill level definitions in 20 C.F.R. §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the *DOT*.  *See* Social Security Ruling 00-4p, 2000 WL 1898704,

(AMC) on January 27, 2004, with complaints of low back pain.  Plaintiff refused services.  (Id. at 344-46.)

Plaintiff was seen again at the AMC emergency room on February 3, 2005, with complaints of lightheadedness, headache, dizziness, and blurred vision.  His conditions of hypertension, diabetes, and back injury were noted.  His current medications were included hydrochlorothiazide (HCTZ), Glucophage, and Celebrex.  His physical examination was unremarkable.  Plaintiff was diagnosed with a viral infection and discharged the same date.  (Id. at 329-43.)

Plaintiff was admitted to the Heart Hospital of Austin on November 1, 2008, for evaluation of non-ST elevation myocardial infarction.  It was noted that Plaintiff had hypertension and poorly controlled diabetes mellitus.  Plaintiff's medications included Lisinopril, Verapamil, Metformin, Lovenox, aspirin, Glucotrol, and HCTZ.  Plaintiff underwent catheterization, angiogram, and stenting and was discharged on November 3 with diagnoses of coronary artery disease, high blood pressure, diabetes, obesity, tobacco abuse, left ventricle dysfunction secondary to high blood pressure, and left ventricular hypertrophy.  On discharge, Plaintiff was prescribed Plavix, nitroglycerin, Glipizide, potassium, Norvasc, Lisinopril,

at *3 (Soc. Sec. Admin. Dec. 4, 2000).

and Metoprolol.  (Id. at 347-53.)

Plaintiff visited Dr. William Cashion, Jr., on November 6, 2008, for follow up.  Plaintiff reported having no chest pain, dyspnea, palpitations, syncope, or near syncope.  Plaintiff's hypertension and diabetes were noted to be poorly controlled; his obesity was described as a major problem.  Diet and exercise was discussed, and Plaintiff was counseled regarding moderate-intensity aerobic physical activity for a minimum of thirty minutes for five days each week.  (Id. at 367-70.)

On December 9, 2008, Dr. Cashion noted Plaintiff to have returned to work full time at the tire company and to have no problems.  An electrocardiogram (ECG) yielded normal results.  (Id. at 371-76.)

Plaintiff was admitted to the emergency room at Scott and White Memorial Hospital on October 6, 2010, with complaints relating to groin pain.  His history of hypertension, type II diabetes mellitus, and coronary artery disease was noted upon admission.  His diabetes was noted to be severely uncontrolled.  Plaintiff reported he was unable to afford his medications.  Plaintiff was gradually restarted on his medications and was discharged on October 8.  Plaintiff's prescriptions on discharge included aspirin, Glyburide, Metformin, Lopressor, Zocor, and HCTZ.  He was given instructions as to diet and medication compliance and was released to

engage in activities as tolerated. (Id. at 232-51.) During follow up on October 19, Plaintiff's medications were adjusted. It was noted that Plaintiff had financial difficulty paying for his medications. Plaintiff's coronary artery disease was noted to be stable. (Id. at 253-55.)

On January 7, 2011, Plaintiff was seen at the AMC emergency room for complaints of chest pain. Results of a stress ECG were normal. Chest x-rays showed lung densities. Plaintiff was admitted to the hospital for medical management of his hypertension, which improved. Plaintiff was discharged on January 9 in stable condition and with instructions to reestablish care with Dr. Barjenbruch. He was prescribed aspirin, Metformin, HCTZ, Lisinopril, Metoprolol, Norvasc, and Simvastatin. (Id. at 265-75, 283.)

Plaintiff visited Dr. Peggy W. Barjenbruch on January 25, 2011, for follow up of his recent hospitalization. Plaintiff complained of chest and back pain as well as shortness of breath with exertion. Physical examination was unremarkable. Dr. Barjenbruch diagnosed Plaintiff with atherosclerotic coronary disease status post stent placement, controlled hypertension, questionably controlled diabetes mellitus, and abnormal chest x-ray. It was noted that Plaintiff would apply for charity care. Dr. Barjenbruch indicated that she would help Plaintiff apply for disability if

needed.  (Id. at 377.)

A CT scan of Plaintiff's chest on February 7, 2011, showed multiple lateral bridging osteophytes of the thoracic spine but otherwise showed no evidence of mass or adenopathy.  (Id. at 307.)

Plaintiff visited Dr. Larry Handlin at Mexico Cardiovascular Associates on February 18, 2011, on referral by Dr. Barjenbruch.  Plaintiff reported having occasional chest discomfort, dyspnea, and fatigue.  Dr. Handlin noted Dr. Barjenbruch to have recently started Plaintiff on Furosemide because of edema.  Plaintiff denied any blurred vision or any other visual disturbances.  Plaintiff denied any swelling or shortness of breath.  Plaintiff denied any back pain, pain in the legs with walking, or limited range of motion.  Plaintiff also denied any dizziness or lightheadedness.  Plaintiff complained of chest pain and pressure and associated discomfort. Physical examination showed no edema.  Dr. Handlin scheduled a cardiac catheterization.  (Id. at 360-62.)

A subsequent cardiac catheterization showed non-occlusive coronary artery disease and global hypokinesis with an ejection fraction between 45 and 50 percent.  Plaintiff was diagnosed with non-occlusive coronary artery disease, non-cardiac chest pain, and mild left ventricular dysfunction.  He was instructed by Dr. Handlin to continue on his current medications.  (Id.

at 294-95, 297-98.)

Plaintiff returned to Dr. Handlin on March 29, 2011, and reported having good days and bad days, with occasional chest discomfort and dizziness.  Plaintiff denied any other symptoms, including blurred vision, swelling, shortness of breath, and back pain.  Plaintiff reported being able to perform all activities of daily living.  Physical examination was unremarkable.  Plaintiff's gait and station were noted to be normal.  Plaintiff was noted to be hypertensive.  Plaintiff was diagnosed with coronary artery disease, hypertension, hyperlipidemia, adult-onset diabetes, and left ventricular dysfunction with left ventricular ejection fraction of 45 percent No change was made in Plaintiff's treatment regimen.  He was instructed to return in six months.  (Id. at 357-59.)

Plaintiff returned to the AMC emergency room on April 24, 2011, with complaints of elevated blood sugar levels.  Plaintiff reported frequent urination and feeling weak, tired, irritable, and thirsty.  He was discharged that same date and was instructed to continue with his medications.  It was noted that Dr. Barjenbruch might consider starting Plaintiff on insulin.  (Id. at 285-92.)

On April 29, 2011, Plaintiff visited Cheryl Lummis, RN, MSN, CDE, at AMC for a diabetic consult.  Although Plaintiff denied having any problems

with his feet or lower extremities, he reported having tingling and burning sensations in his feet. Plaintiff reported not engaging in any regular exercise but denied any limitations to physical activity. Plaintiff described his general health as fair. After consulting with Dr. Barjenbruch, Ms. Lummis started Plaintiff on Lantus. Plaintiff was provided a meal plan for diet management. (Id. at 299-306.)

Plaintiff returned to Dr. Barjenbruch on August 5, 2011, and reported that he was applying for disability. Dr. Barjenbruch noted that Plaintiff "was not able to work. He tried to be on his feet and just developed terrible venous insufficiency ulcers and swelling. He continues to have increased shortness of breath and swelling in his legs and feet." (Id. at 378.) Review of systems showed Plaintiff reported no shortness of breath or chest pain. Plaintiff reported no polyuria or frequency in urinating. His physical examination was unremarkable. Dr. Barjenbruch diagnosed Plaintiff with uncontrolled hypertension, diabetes mellitus controlled with insulin, mild anemia, hyperlipidemia, venous insufficiency, atherosclerotic coronary artery disease, history of heart attack, and obesity. Dr. Barjenbruch opined that Plaintiff was unable to engage in medium work. (Id. at 377-78.)

Plaintiff visited Dr. Handlin on September 27, 2011, and reported having intermittent chest pain. Plaintiff reported the pain to be at a level

two "most of the time," occasionally rising to a level seven. Dr. Handlin noted Plaintiff was taking insulin for his diabetes. Plaintiff reported being able to engage in all activities of daily living. Plaintiff denied blurred vision or any other visual disturbances; shortness of breath with activity or lying down; swelling of the feet, legs, or ankles; any racing or pounding heartbeat; and back pain. Plaintiff reported having chest pain and pressure. Physical examination was unremarkable. Dr. Handlin noted there were no signs or symptoms of congestive heart failure or angina. Plaintiff's gait and station were normal. Dr. Handlin instructed Plaintiff to increase his dosage of Lisinopril and to return in three months. (Id. at 354-56.)

On December 6, 2011, Plaintiff's medications were noted to include Amlodipine, Furosemide, Glyburide, Lantus, Lisinopril, Metformin, Metoprolol, Simvastatin, and aspirin. (Id. at 379.)

In a letter to Plaintiff's counsel dated January 16, 2012, Dr. Barjenbruch stated that she had been Plaintiff's physician since 1993 and that Plaintiff had returned to her in January 2011 after having resided in another state for a period of time. Dr. Barjenbruch listed Plaintiff's impairments and reported:

> He continues to have angina on occasion. He also has shortness of breath with any exertion due to his obesity and

also his left ventricular dysfunction. The patient has significant venous insufficiency and peripheral edema from his left ventricular dysfunction and his congestive heart failure. He is not able to work. He has tried several jobs with inability to keep them because of his shortness of breath, chest pain, and venous insufficiency with the swelling of his legs, and the inability to ambulate. The patient is also stopped by his left ventricular dysfunction which induces his shortness of breath.

(Id. at 380.) Dr. Barjenbruch opined that Plaintiff was unable to work because of his impairments and that medium work was "totally out of the question" given his coronary artery disease and left ventricular dysfunction. (Id.)

## The ALJ's Decision

The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity since December 2, 2010, the alleged onset date of disability. The ALJ found Plaintiff's obesity, hypertension, coronary artery disease, and diabetes to be severe impairments, but concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further found Plaintiff has the residual functional capacity (RFC) to perform light work[2] except that he should avoid

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal

concentrated exposure to hazards. The ALJ determined that Plaintiff is able to perform his past relevant work as a dump truck driver. Plaintiff was not, therefore, under a disability from December 2, 2010, through the date of the decision. (Id. at 13-20.)

## Medical Records Submitted to the Appeals Council[3]

In a letter to Plaintiff's counsel dated February 22, 2012, Dr. Barjenbruch reported that, if employed, Plaintiff would "require numerous rest periods during the day in a reclined position due to shortness of breath, leg swelling and chest pain. It is also likely he would miss several days a month of work. This is all reasonable due to Todd Gardner's multiple medical conditions." (Id. at 383.)

Plaintiff returned to Dr. Handlin on March 27, 2012, and reported having good days and bad days. On bad days, he felt drained and short of breath. He was not having as much chest discomfort in that he experienced the discomfort only twice weekly instead of every day. Plaintiff reported that he walks one-half to one block each evening. Dr. Handlin discussed with Plaintiff the need for increased activity. Dr. Handlin noted

---

of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[3] In making its determination to deny review of the ALJ's decision, the Appeals Council considered additional evidence which was not before the ALJ. The Court must consider this additional evidence in determining whether the ALJ's decision was supported by substantial evidence. **Frankl v. Shalala**, 47 F.3d 935, 939 (8th Cir. 1995); **Richmond v. Shalala**, 23 F.3d

that Plaintiff did not exhibit any signs or symptoms of congestive heart failure/angina, but was taking an increased dosage of Lasix. Plaintiff reported being able to perform all activities of daily living. Review of systems showed Plaintiff to deny having blurred vision or any other visual disturbances; any shortness of breath with activity or while lying down; chest pain or pressure or any swelling of the feet, ankles, or legs; any racing or pounding heartbeat; any frequent urination; and any back pain or limited range of motion. Physical examination was normal. Plaintiff's gait and station were noted to be normal. Plaintiff was diagnosed with hyperlipidemia, diabetes non-insulin, coronary artery disease, and benign hypertension. Plaintiff was prescribed Cardura. (Id. at 386-88.)

Plaintiff was admitted to the AMC emergency room April 15, 2012, with complaints of experiencing intermittent numbness in the left leg and foot for seven days. Plaintiff's gait was noted to be unsteady. Tenderness and swelling was noted about the lower extremity. Chest x-rays showed no acute cardiopulmonary process. Plaintiff was given Lovenox. Plaintiff was diagnosed with possible diabetic neuropathy and was instructed to follow up with Dr. Barjenbruch. (Id. at 394-99.) A venous study of the lower extremities performed the following day yielded normal results bilaterally.

---

1441, 1444 (8th Cir. 1994).

(Id. at 392-93.)

## Discussion

To be eligible for DIB and SSI under the Social Security Act, Plaintiff must prove that he is disabled. **Pearsall v. Massanari**, 274 F.3d 1211, 1217 (8th Cir. 2001); **Baker v. Secretary of Health & Human Servs.**, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; **Bowen v. Yuckert**, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in

substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); **Richardson v. Perales**, 402 U.S. 389, 401 (1971); **Estes v. Barnhart**, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  **Johnson v. Apfel**, 240 F.3d 1145, 1147 (8th

Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." **Coleman v. Astrue**, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  **Id.** (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    Plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of Plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth Plaintiff's impairments.

**Stewart v. Secretary of Health & Human Servs**., 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).  The Court must also consider any evidence which fairly detracts from the Commissioner's decision.

**Coleman**, 498 F.3d at 770; **Warburton v. Apfel**, 188 F.3d 1047, 1050 (8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  **Pearsall**, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  **Weikert v. Sullivan**, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also **Jones ex rel. Morris v. Barnhart**, 315 F.3d 974, 977 (8th Cir. 2003).

In this action, Plaintiff argues that the ALJ erred in his decision by improperly analyzing the opinion evidence rendered by Plaintiff's treating physician, Dr. Barjenbruch.  For the following reasons, the ALJ committed no legal error, and his decision is supported by substantial evidence on the record as a whole.

In evaluating opinion evidence, the Regulations require the ALJ to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources.  *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).[4]  The Regulations require that more

---

[4] Citations to 20 C.F.R. §§ 404.1527 and 416.927 are to the 2011 version of the Regulations,

weight be given to the opinions of treating physicians than to those of other sources. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also **Forehand v. Barnhart**, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such

which were in effect at the time the ALJ rendered the final decision in this cause. This Regulation's most recent amendment, effective March 26, 2012, reorganizes the subparagraphs relevant to this discussion but does not otherwise change the substance therein.

factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the treating physician provides support for his findings, whether other evidence in the record is consistent with the treating physician's findings, and the treating physician's area of specialty. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Regulations further provide that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Here, the ALJ gave little weight to Dr. Barjenbruch's medical opinion, noting that it was not supported by objective evidence, it was based on Plaintiff's subjective complaints found by the ALJ to be only partially credible, and it was inconsistent with other substantial evidence of record. (Tr. at 18-19.) Because these reasons are supported by substantial evidence on the record as a whole, the ALJ did not err in according little weight to the opinion.

As an initial matter, the undersigned notes that the ALJ properly discounted Dr. Barjenbruch's opinion that Plaintiff was unable to work inasmuch as such a determination involves an issue reserved for the Commissioner and is not the type of opinion the Commissioner must credit.

See **Ellis v. Barnhart**, 392 F.3d 988, 994-95 (8th Cir. 2005).  Additionally, the ALJ properly noted that objective evidence failed to demonstrate that Plaintiff experienced the significant symptoms upon which Dr. Barjenbruch based her opinion.  No physical examination yielded evidence of swelling or shortness of breath, and diagnostic testing showed mild conditions at most.  See **Steed v. Astrue**, 524 F.3d 872, 875 (8th Cir. 2008) (diagnosis tempered by the words "mild" or "minimal"); **Kelley v. Callahan**, 364 F.3d 984, 986 (8th Cir. 2004) (treating physician's opinion must be supported by medically acceptable clinical or diagnostic data).  And, the ALJ noted the record did not show that Plaintiff was unable to ambulate effectively. Indeed, the treatment notes rendered by Dr. Handlin show the contrary.  It is the duty of the Commissioner to resolve conflicts in the evidence, including medical evidence.  **Renstrom v. Astrue**, 680 F.3d 1057, 1065 (8th Cir. 2012); **Spradling v. Chater**, 126 F.3d 1072, 1075 (8th Cir. 1997); **Bentley v. Shalala**, 52 F.3d 784, 787 (8th Cir. 1995).

Given the lack of objective evidence demonstrating the severity of Plaintiff's symptoms as described by Dr. Barjenbruch, the ALJ found Dr. Barjenbruch's opinion to be based on Plaintiff's subjective reports, which were determined by the ALJ not to be entirely credible.[5]  Where a treating

---

[5] Although Plaintiff does not challenge the ALJ's credibility determination here, a review of the

physician's opinions are largely based on a claimant's subjective complaints rather than on objective findings, an ALJ does not err in giving such opinions less than controlling weight. **Renstrom**, 680 F.3d at 1064.

Finally, the ALJ found Dr. Barjenbruch's opinion to be inconsistent with other substantial evidence on the record. Specifically, the ALJ noted that Dr. Barjenbruch's statement that Plaintiff had tried to work at several jobs but was unable to maintain employment because of his impairments was inconsistent with Plaintiff's testimony that he quit his job in November 2010 because he was moving to another state and had not applied for or attempted any work since that time. The ALJ also noted ECG testing in January 2011 yielded normal results and that Plaintiff's impairments improved with medication, resulting in asymptomatic and stable findings. See **Roth v. Shalala**, 45 F.3d 279, 282 (8th Cir. 1995) (impairments that are controllable or amenable to treatment do not support a finding of disability). Moreover, the record shows Plaintiff repeatedly reported to his physicians that he was able to engage in all activities of daily living and was

ALJ's decision nevertheless shows that, in a manner consistent with and as required by **Polaski v. Heckler**, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted), the ALJ thoroughly considered the subjective allegations of Plaintiff's disabling symptoms on the basis of the entire record before him and set out numerous inconsistencies detracting from the credibility of such allegations. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. **Battles v. Sullivan**, 902 F.2d 657, 660 (8th Cir. 1990). Because the ALJ's credibility determination is supported by substantial evidence on the record as a whole, the Court is bound by this determination. **Robinson v. Sullivan**, 956 F.2d 836, 841 (8th Cir. 1992).

not limited by his impairments. Indeed, in March 2012, Plaintiff's treating cardiologist instructed Plaintiff to increase his level of activity. Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion. **Goff v. Barnhart**, 421 F.3d 785, 790-91 (8th Cir. 2005).[6]

Nevertheless, as noted by the Commissioner, the ALJ's finding that Plaintiff was limited to light work with an environmental restriction to avoid hazards imposes a significant limitation in itself, demonstrating that the ALJ did not entirely reject Dr. Barjenburch's opinion in making his RFC determination. See **Martise v. Astrue**, 641 F.3d 909, 926 (8th Cir. 2011). See also **Choate v. Barnhart**, 457 F.3d 865, 869-70 (8th Cir. 2006) (restriction to light work with environmental restrictions considered to be significant limitation). The ALJ noted Dr. Barjenbruch's opinion that Plaintiff could not engage in medium work to be consistent with the evidence of record. Further, the ALJ's determination that Plaintiff was limited to light work is largely consistent with Plaintiff's own claimed abilities to sit, stand, walk, and lift. Cf. **Baldwin v. Barnhart**, 349 F.3d 549, 557 (2003)

---

[6] To the extent Plaintiff refers to medical records from the Department of Veterans Affairs to support his argument that Dr. Barjenbruch's opinion enjoys support in the record (*see* Pltf.'s Brief, Doc. #22 at pp. 9-10), a review of the record in its entirety shows it not to contain any evidence from the Department of Veterans Affairs. In addition, Plaintiff testified at the administrative hearing that he never served in the military. (*See* Tr. 36.) It thus appears that Plaintiff's reference to records from the Department of Veterans Affairs is in error.

(exertional restrictions in RFC consistent with claimant's testimony as to such).

A review of the ALJ's decision shows the ALJ to have properly evaluated Plaintiff's limitations in view of all the evidence of record and to have provided good reasons for the weight accorded Dr. Barjenbruch's opinion. An ALJ is not required to adopt a medical opinion in its entirety, but instead must make an RFC determination upon review of the record as a whole. **Martise**, 641 F.3d at 927. A reading of the ALJ's decision shows the ALJ to have made such a thorough review. Because the available medical and other evidence of record substantially supports the ALJ's determination, Plaintiff's claim that the ALJ improperly substituted his opinion for that of Plaintiff's treating physician to find him not disabled is without merit. <u>See</u> **Gulliams v. Barnhart**, 393 F.3d 798, 803 (8th Cir. 2005); **Zeiler v. Barnhart**, 384 F.3d 932, 936 (8th Cir. 2004).

Accordingly, substantial evidence on the record as whole supports the ALJ's determination to accord little weight to Dr. Barjenbruch's opinion in this cause.

## Conclusion

For the reasons set out above, the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence on the record

as a whole. Inasmuch as substantial evidence on the record as a whole supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court might have reached a different conclusion. **Gowell v. Apfel**, 242 F.3d 793, 796 (8th Cir. 2001); accord **Buckner v. Astrue**, 646 F.3d 549, 556 (8th Cir. 2011). Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and this action is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2014..